*NOT FOR PUBLICATION*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| REBECCA ROSS, | : |
| Plaintiff, | Civil Action No. 18-03643 (FLW) |
| v. | OPINION |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Defendant. | |

**WOLFSON, United States District Judge:**

Rebecca Ross ("Ross" or "Plaintiff"), appeals from the final decision of the Acting Commissioner of Social Security, Nancy A. Berryhill ("Defendant") denying Plaintiff disability benefits under Titles II and XVI of the Social Security Act (the "Act"). After reviewing the Administrative Record, the Court finds that the Administrative Law Judge's ("ALJ") opinion was based on substantial evidence and, accordingly, affirms the decision.

**I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff was born on July 10, 1971. AR 314. She has a GED and completed a course in Microsoft Office and Medical Billing. AR 320. She worked as a desk clerk in a gym from 2007-2008, and then as a small parts assembler from 2008 to 2013. AR 329. In 2013, she began suffering from stress and anxiety at her job and began missing work and leaving early, and was fired in March of that year. AR 46.

On August 22, 2013, Plaintiff filed applications for Social Security Disability Insurance (SSD) and Supplemental Security Income (SSI) alleging that she became disabled on March 4, 2013. AR 110. In the application, she alleged the following illnesses, injuries or conditions: acute Hepatitis C; anxiety; severe depression; mental OCD; bipolar (undiagnosed); and PTSD. AR 110-11. The initial applications were denied on January 29, 2014, and Plaintiff filed a request for Reconsideration on February 4, 2014, which was denied on May 27, 2014. AR 145-57. Plaintiff appealed, and on August 9, 2016, a hearing was held in Newark, New Jersey before ALJ Beth Shillin. AR 37-84. On September 29, 2016, the ALJ issued a written decision affirming the denial of Plaintiff's benefits. AR 20-30. On January 18, 2018, the Appeals Council denied Plaintiff's request for review, thereby rendering the ALJ's decision of September 29, 2016 the final determination of the Commissioner. AR 1-6.

Plaintiff contests two main aspects of the ALJ's decision, both associated with her Residual Functional Capacity ("RFC") assessment at step four of the sequential evaluation process. She argues that the ALJ 1) erred in the weighing of the opinion evidence of Plaintiff's treating psychiatrist; and 2) made findings in her RFC assessment that were unsupported by substantial evidence.

**A. Medical Evidence**

1. Ocean Mental Health (March 2013 to September 2013)

In March of 2013, Plaintiff checked into Ocean Mental Health ("OMH") after her primary care physician advised her to see a psychiatrist. AR 404. On March 5, 2013, Dr. Lamberto Tan, M.D. conducted an intake evaluation. AR 404-406. He noted that Plaintiff had an anxious mood and depressed affect but had fair attention span, eye contact, psychomotor activity, and intact knowledge, judgment, insight, and cognitive functioning. AR 405. Plaintiff was diagnosed with panic disorder, PTSD, and adjustment disorder (depressed), and was assessed a

Global Assessment of Functioning ("GAF") Score of 50.[1] AR 406. Her clinical interpretation was of chronic anxiety and depression. AR 406.

On March 28, 2013, a social worker, Meghan Magahan, assessed Ross to be anxious, a bit disheveled, cooperative, speech a bit rapid, memory intact, and with fair insight and judgment. AR 944-945. Ross complained of panic attacks, racing thoughts, nightmares, and going days without showering. AR 944.

On August 28, 2013, Dr. Georgina Cid, MD noted that Plaintiff had been admitted to Riverview Medical Center due to drinking, driving drunk, and feeling overwhelmed because she had no place to live. AR 938. Dr. Cid opined that Ross was dysphoric but less depressed after the session, had poor judgment, no hallucinations, relevant thought process, no delusions, and no suicidal or homicidal ideations. AR 938. Dr. Cid diagnosed Ross with Bipolar I Disorder, most recent episode depressed. AR 939.

In September 2013, Plaintiff was discharged from OMH because she reported that she was moving to Tennessee. AR 936. A report noted that she had complied with treatment and followed through with all recommendations given to her. AR 936.

2. Meridian Health – Riverview Medical Center

Plaintiff was hospitalized in August 2013 with a blood alcohol level of .31. AR 543. She was seen at the emergency room at Riverview where she admitted over the past several months to drinking to the point of blacking out three times a week and then intermittently using cocaine

---

[1] GAF scores are used by "mental health clinicians and doctors to rate the social, occupational, and psychological functioning of adults." *Irizarry v. Barnhart*, 233 Fed. Appx. 189, 190 n. 1 (3d Cir. 2007). "A GAF score of 50 or below indicates serious symptoms, while a GAF score of 51 through 60 indicates moderate symptoms." *Rivera v. Astrue*, 9 F. Supp. 3d 495, 504 (E.D. Pa. 2014). Although GAF scores have "fallen somewhat into disfavor," as the American Psychiatric Association abandoned the GAF scale in the most recent edition of the DSM ("DSM-V"), they remain medical evidence that an ALJ must consider. *Nixon v. Colvin*, 190 F. Supp. 3d 444, 447 (E.D. Pa. 2016).

while intoxicated. AR 523. Her drug screen was positive for cocaine and benzodiazepenes. AR 543. She reported being depressed after her ex-boyfriend took her children to live in another state and her daughter kicked her out of her home. AR 484, 542. She was admitted to the inpatient psychiatric unit for safety and stabilization. AR 524. During hospitalization, she attended group and milieu therapy and participated in treatment. AR 524. On the date of discharge, Ross was mildly anxious, had circumstantial thought processes that needed redirection at times, but the exam was otherwise normal, and she was sleeping and eating well. AR 523-24. Her discharge diagnoses were depressive disorder, alcohol abuse and cocaine abuse. AR 523.

3. Centerstone (October 2013 to March 2014)

Plaintiff was treated at Centerstone Clinic from October 2013 through March 2014. AR 724-42, 796-830. On intake, Plaintiff was anxious and depressed with poor insight, judgment and motivation for treatment. AR 727-28. However, Ross was motivated to refer herself to treatment even though she had no insurance and no income. AR 729, 731. She was diagnosed with PTSD and bipolar I disorder, severe without psychotic features. AR 737. In October, Plaintiff explained that she had moved to Tennessee in September and she was doing better and her anxiety was decreasing. AR 738. In January 2014, she was focused and logical discussing attempting to regain custody of her children, AR 811, and had appropriate appearance, appropriate affect, intact judgment, pressured speech, dysphoric mood, and fair insight. AR 824. She was diagnosed with PTSD, chronic and bipolar I disorder, most recent episode manic, severe. AR 827. In February, Plaintiff reported remaining abstinent from substances. AR 803. Ross complained of sweaty hands, shaking, and panic attacks and it was noted on exam that she had pressured speech and dysphoric mood, but the exam was otherwise normal. AR 804, 806. In March 2014, Plaintiff reported increased anxiety, as she was upset about her ex-husband trying to gain full custody of her children. AR 799.

4. Ocean Mental Health (July 2014 to July 2016)

Plaintiff resumed treatment in July 2014 at OMH. AR. 884. Plaintiff followed up with her psychiatrist, Dr. Cid, or other members of the staff every few months. *See generally* AR 843-98. At the initial examination on July 22, 2014, Mary Colberg, APN did a psychiatric intake evaluation, noting Plaintiff had returned from Tennessee in May "and decided not to go back because she met someone." AR 880. Colberg also noted that Plaintiff related that "she is not on medication and that it is becoming a problem." AR 880. The assessment also reported that Plaintiff's last used a substance—cocaine—on July 3, and that she drinks socially at this point of her life. AR 880. Ross otherwise had an anxious mood, tangential thought process, rambling and rapid speech, and was fidgeting, but the exam was otherwise normal. AR 884, 890-891. In September 2014, a social worker noted that Ross had poor eye contact, tangential thought process, rambling and rapid speech and fidgeting motor activity. AR 893-894. She was also cooperative with fair memory, insight, and reliability. AR 893. Plaintiff reported that she was considering retaking her cosmetology exam. AR 893. Over the course of her visits, Plaintiff generally appeared anxious, but also had fair judgment and insight, a broad affect, and fair memory and reliability. AR 843-98.

5. Dr. Cid's Opinions

In a March 31, 2016 questionnaire, Dr. Cid diagnosed Plaintiff with bipolar disorder, depressed, and stated that Plaintiff's impairment would last for more than 12 months if she was non-compliant with medications. AR 900-901. She indicated that Plaintiff did not have reduced intellectual functioning, had "slight" restriction in activities of daily living and social functioning, "often" had restrictions in concentration, persistence, and pace, and was unable to determine whether there would be any episodes of deterioration or decompensation in work or work-like settings. AR 902. Dr. Cid indicated that Plaintiff exhibited the following signs and

symptoms: appetite disturbance with weight change, sleep disturbance, mood disturbance, emotional lability, decreased energy, feelings of guilt/worthlessness, depression, anxiety and mild to moderate impulsiveness. AR 900-901. Nonetheless, Dr. Cid reported that Plaintiff had a good response to treatment, and she assessed a GAF score of 75. AR 900. Dr. Cid then opined that Plaintiff would "more or less" be absent from work two days each month and she was unable to determine if Plaintiff could work a job on a regular basis AR 902.

In July 2016, Dr. Cid completed another Mental Impairment Questionnaire checklist from Plaintiff's attorney and assessed moderate restriction in activities of daily living, social functioning, and in concentration, persistence, or pace. AR 920-21. "Moderate loss" was defined on the form as "some loss of ability in the named activity but still can sustain performance up to 2/3 of an 8 hour workday." AR 920. Dr. Cid did not offer any narrative explanation for the boxes that she checked off on the form. AR 920-21.

      6. <u>State Agency Psychologists</u>

In January 2014, state agency psychologist Dorothy Tucker, Ph.D., reviewed the record, assessing that Plaintiff suffered from affective disorder, anxiety disorder, and substance addiction disorders that mildly restricted her activities of daily living, and moderately limited her ability to maintain social functioning and to maintain concentration, persistence, or pace; and caused one-to-two episodes of decompensation, each of extended duration. AR 89. Dr. Tucker opined that Plaintiff could understand and remember simple and detailed tasks (but not make executive decisions); she could sustain concentration and persistence for these with customary breaks; she could interact infrequently with supervisors, coworkers, and the general public; set goals on a limited basis; and adapt to infrequent change. AR 94, 106. A second state agency psychologist Robert de la Torre, Psy.D, reviewed the updated record in May 2014 and affirmed Dr. Tucker's assessment. AR 122-23.

### B. Plaintiff's Testimony Before ALJ

Plaintiff testified at the August 9, 2016 hearing before ALJ Shillin. Ross testified that she believed that she was disabled because she has trouble concentrating, has a poor memory, gets tired, and cannot complete tasks that are given to her. AR 53. She testified that she only showers once a week due to lack of energy and does not read. AR 53, 68. She enjoys watching television and does her laundry, but normally does not do any cooking, does not go to movies, and had a Facebook account but does not use it anymore. AR 63-67. Plaintiff was social within a small group, including spending time with her daughter and her boyfriend. AR 64-66. She also drives an hour and a half to visit her children every other weekend, sometimes going to the park while there. AR 48-49, 65.

Plaintiff also testified that she has manic episodes, the last one occurring four to five months prior to the hearing, and lasting four days. AR 68-69. During the episode, she did not sleep much, she babbled, and was very hyper. AR 68-69.

### C. Vocational Expert's Testimony

At the hearing, the ALJ took the testimony of an impartial vocational expert ("VE"). AR 72-83. The ALJ asked the VE to assume a person of Plaintiff's age, education, and work background, who could perform work at all exertional levels with no climbing ladders, ropes, or scaffolds; no exposure to heavy machinery or heights; occasional contact with the public, co-workers, and supervisors, that involved no more than simple, routine, repetitive tasks. AR 72-73. The vocational expert testified that such an individual could return to Plaintiff's past work as a small parts assembler, and also identified the additional unskilled occupations of hand packager, merchandise marker, document specialist, room attendant, lab equipment cleaner, and address clerk. AR 73-74. The VE found that there would be no jobs for someone with Ross' vocational

factors who was off task 11% of the workday or who missed two days of work per month. AR 75.

### D. ALJ's Decision

ALJ Shillin issued her decision on September 29, 2016. AR 20-30. The ALJ evaluated Plaintiff's claims under the five-step process outlined in the regulations. At step one, the ALJ found that Plaintiff had worked since March 4, 2013, her alleged disability onset date, but it did not rise to the level of substantial gainful work activity. AR 22. At steps two and three, respectively, the ALJ determined that substance abuse, depression, anxiety, and post-traumatic stress disorder were severe impairments that did not meet or medically equal any of the presumptively disabling listed impairments described in the regulations. AR 22-25.

At step four, the ALJ found Plaintiff retained the RFC to perform a full range of work at all exertional levels except that she could perform routine and repetitive tasks, but not at a production rate pace (e.g. assembly line work); she could not climb ladders, ropes, or scaffolds, and could have no exposure to heavy machinery or heights; and she was limited to occasional contact with the general public, co-workers, and supervisors, involving no more than simple, repetitive, and routine tasks. AR 25-28. The ALJ found Plaintiff could return to her past relevant work, including as a small parts assembler. AR 28.

At step five, the ALJ also made an alternative determination, after considering Plaintiff's age, education, work experience, RFC, and the vocational expert's testimony, that there were a significant number of unskilled jobs existing in the national economy that Plaintiff could perform AR 28-29. Accordingly, the ALJ found that Plaintiff was not disabled from March 4, 2013, her alleged disability onset date, through September 19, 2016, the date of the ALJ's decision. AR 30.

## II. STANDARD OF REVIEW

On a review of a final decision of the Commissioner of the Social Security Administration, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). The Commissioner's decisions regarding questions of fact are deemed conclusive on a reviewing court if supported by "substantial evidence in the record." 42 U.S.C. § 405(g); *see Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). While the court must examine the record in its entirety for purposes of determining whether the Commissioner's findings are supported by substantial evidence, *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978), the standard is highly deferential. *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). Indeed, "substantial evidence" is defined as "more than a mere scintilla," but less than a preponderance. *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004). "It means such relevant evidence as a reasonable mind might accept as adequate." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999). A reviewing court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992), *cert. denied*, 507 U.S. 924 (1993). Accordingly, even if there is contrary evidence in the record that would justify the opposite conclusion, the Commissioner's decision will be upheld if it is supported by the evidence. *See Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986).

Disability insurance benefits may not be paid under the Act unless Plaintiff first meets the statutory insured status requirements. *See* 42 U.S.C. § 423(c). Plaintiff must also demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A); *see Plummer*, 186 F.3d at 427. An individual is not disabled unless "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). Eligibility for supplemental security income requires the same showing of disability. *Id.* at § 1382c (a)(3)(A)-(B).

The Act establishes a five-step sequential process for evaluation by the ALJ to determine whether an individual is disabled. *See* 20 C.F.R. § 404.1520. First, the ALJ determines whether the claimant has shown that he or she is not currently engaged in "substantial gainful activity." *Id.* at § 404.1520(a); *see Bowen v. Yuckert*, 482 U.S. 137, 146-47 n.5 (1987). If a claimant is presently engaged in any form of substantial gainful activity, he or she is automatically denied disability benefits. *See* 20 C.F.R. § 404.1520(b); *see also Bowen*, 482 U.S. at 140. Second, the ALJ determines whether the claimant has demonstrated a "severe impairment" or "combination of impairments" that significantly limits her physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c); *see Bowen*, 482 U.S. at 146-47 n.5. Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). These activities include physical functions such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." *Id.* A claimant who does not have a severe impairment is not considered disabled. *Id.* at § 404.1520(c); *see Plummer*, 186 F.3d at 428.

Third, if the impairment is found to be severe, the ALJ then determines whether the impairment meets or is equal to the impairments listed in 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the "Impairment List"). 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant demonstrates that his

or her impairments are equal in severity to, or meet those on the Impairment List, the claimant has satisfied his or her burden of proof and is automatically entitled to benefits. *See id.* at § 404.1520(d); *see also Bowen*, 482 U.S. at 146-47 n.5. If the specific impairment is not listed, the ALJ will consider in his or her decision the impairment that most closely satisfies those listed for purposes of deciding whether the impairment is medically equivalent. *See* 20 C.F.R. § 404.1526(a). If there is more than one impairment, the ALJ then must consider whether the combination of impairments is equal to any listed impairment. *Id.* An impairment or combination of impairments is basically equivalent to a listed impairment if there are medical findings equal in severity to all the criteria for the one most similar. *Williams*, 970 F.2d at 1186.

If the claimant is not conclusively disabled under the criteria set forth in the Impairment List, step three is not satisfied, and the claimant must prove at step four whether he or she retains the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. § 404.1520(e); *Bowen*, 482 U.S. at 141. If the claimant is able to perform previous work, the claimant is determined to not be disabled. 20 C.F.R. §§ 404.1520(e), 416.920(e); *Bowen*, 482 U.S. at 141-42. The claimant bears the burden of demonstrating an inability to return to the past relevant work. *Plummer*, 186 F.3d at 428. Finally, if it is determined that the claimant is no longer able to perform his or her previous work, the burden of production then shifts to the Commissioner to show, at step five, that the "claimant is able to perform work available in the national economy." *Bowen*, 482 U.S. at 146-47 n.5; *Plummer*, 186 F.3d at 428. This step requires the ALJ to consider the claimant's residual functional capacity, age, education, and past work experience. 20 C.F.R. § 404.1520(f). The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether the claimant is capable of performing work and not disabled. *Id*.

## III. DISCUSSION

Plaintiff's appeal is limited two aspects of the ALJ's RFC determination at step four of the sequential evaluation process. First, Plaintiff asserts the ALJ wrongly weighed two separate questionnaires filled out by Plaintiff's treating psychiatrist, Dr. Cid. Second, Plaintiff contends that certain findings in the RFC assessment were unsupported by substantial evidence.

### A. The ALJ's Decision to Discount the Opinion of Plaintiff's Treating Psychiatrist, Dr. Cid

Plaintiff objects 1) to the ALJ's decision to afford "no weight" to the opinion of Plaintiff's psychiatrist, Dr. Cid, that Plaintiff would "more or less" miss two days of work per month, and 2) the decision to not grant "controlling weight" to Dr. Cid's opinion that Plaintiff had "moderate" limitations in all of the domains of functioning. It is well established that "the ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) (citing 20 C.F.R. §§ 404.1527(e)(1), 404.1546(c)). Furthermore, while an ALJ must consider the opinions of treating physicians, "[t]he law is clear ... that the opinion of a treating physician does not bind the ALJ" where it is not well supported or there is contradictory evidence. *Id.* (alteration in original) (quoting *Brown v. Astrue*, 649 F.3d 193, 197 n.2 (3d Cir. 2011)).

Under 20 C.F.R. § 404.1527(c)(2), a treating source's opinion will be given controlling weight if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." Several factors may also be used to determine the weight given to a medical opinion including: the length of the treatment relationship; the nature and extent of the treatment relationship; supportability by the medical evidence; and consistency with the record as a whole.

*Id.* If a treating source's opinion conflicts with that of other medical sources, "the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reasons." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). That is, the ALJ must rely only on "contradictory medical evidence" in rejecting the treating source's opinion, rather than "credibility judgments, speculation or lay opinion." *Id.* An ALJ may also grant less weight to a treating physician's opinion where it conflicts with his or her own treatment notes. *See, e.g., Millard v. Comm'r.,* 2014 WL 516525, at *2 (W.D.Pa. Feb.7, 2014). An ALJ is required to provide "an explanation of the reasoning behind [his] conclusions," including "reason(s) for discounting rejected evidence." *Fargnoli v. Halter*, 247 F.3d 34, 43 (3d. Cir. 2001).

First, Plaintiff argues that that the ALJ erred in assigning no weight to Dr. Cid's March 2016 questionnaire indicating that Plaintiff's symptoms would cause her to miss two days of work per month. While Plaintiff appears correct that the ALJ seemed to erroneously believe that there were only three interactions between Plaintiff and Dr. Cid prior to rendering her opinion, when in fact there were many, the ALJ also based her opinion on the fact that the conclusion conflicted with the rest of Dr. Cid's opinion. It is well settled that an ALJ may grant less weight to a treating physician's opinion where it conflicts with his or her own treatment notes. *Millard*, 2014 WL 516525, at *2. As the ALJ indicated, Dr. Cid assessed a GAF score of 75, and found that Plaintiff "did not have reduced intellectual functioning and had only slight restriction in activities of daily living and social functioning, and moderate restrictions in concentration, persistence and pace." AR 27. All of this, as the ALJ properly concluded, outweighed Dr. Cid's unsupported conclusion that Plaintiff would "more or less" be absent two days a month. In other words, in the ALJ's view, Dr. Cid's opinion in this regard is not based on sufficient medical evidence.

Second, Plaintiff also takes issue with Dr. Cid's decision to afford some, but not controlling, weight to Dr. Cid's July 21, 2016 questionnaire that assessed Ross with moderate limitations in all areas. As the ALJ noted, this assessment conflicted with Dr. Cid's March 31, 2016 questionnaire, which, although utilizing a different scale than in the July report, found only "slight" limitations in two areas and the equivalent of a "moderate" limitation in one area. [2] Although Plaintiff did have another office visit on the same day that Dr. Cid completed the second questionnaire, there do not appear to have been any marked changes (aside from a new finding of "abnormal movements") that would have justified the change in Dr. Cid's assessment. Moreover, Dr. Cid simply checked boxes on the questionnaire and provided no narrative explanations for these changes. As the Third Circuit has repeatedly stated, the reliability of checkmark reports, in which a physician's obligation is only to "check a box" or fill in a blank, is "weak evidence at best." *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993). *See also Grogan v. Comm'r of Soc. Sec.*, 459 F. App'x 132, n.7 (3d Cir. 2012) (same); *Chetoka v. Colvin*, No. 13-941, 2014 WL 295035, at *11 (W.D. Pa. Jan. 27, 2014) ("[A]n ALJ may grant less weight to the opinion of a treating physician depending on the extent to which supporting explanations are included.... Form reports in which a physician's obligation is only to check a box or fill in a blank are at best weak evidence, particularly when unaccompanied by objective

---

[2] In the first questionnaire, Dr. Cid found that Plaintiff "often" had restrictions in concentration, persistence and pace. As can be seen on the same form, "moderate" and "often" are equivalent categorizations. "Moderate" occupies a position of medium severity, with "none" and "slight" as less severe, and "marked" and "extreme" as more severe. AR 902. "Often" also occupies a position of medium severity, with "never" and "seldom" as less severe, and "frequent" and "constant" as more severe. AR 902.

supporting evidence.") (citations omitted). Thus, the ALJ was justified in not granting

"controlling weight" to Dr. Cid's questionnaire answers.[3]

### B. The ALJ's Residual Functional Capacity Assessment

Plaintiff also contests other aspects of the ALJ's findings in assessing Plaintiff's RFC. "Residual functional capacity is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)); *see* 20 C.F.R. § 404.1545(a). The ALJ is responsible for making the ultimate determination of an individual's RFC. 20 C.F.R. § 404.1546; *see Chandler*, 667 F.3d 356 at 361 ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations."). "[I]n making a residual functional capacity determination, the ALJ must consider all evidence before him," and, although the ALJ may weigh the credibility of the evidence, he must "give some indication of the evidence which he rejects and his reason(s) for discounting such evidence." *Burnett*, 220 F.3d at 121; *see Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). "In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705. "Where the ALJ's findings of fact are supported by substantial evidence, [district courts] are bound by those findings, even if [the courts] would have decided the factual inquiry differently."

---

[3] Plaintiff also argues that the ALJ erred by purportedly "adopting" Dr. Cid's July 21 opinions of "moderate" limitations in all areas, yet still finding that she was capable of "basic work activities." Contrary to Plaintiff's contention, however, the ALJ did not "adopt" these opinions. She merely stated that she accounted for any reduction in attention or concentration that Dr. Cid found by "limiting the claimant to simple, repetitive and routine tasks in the residual functional capacity outlined above." AR 27. Nowhere did the ALJ state, however, that she agreed with or adopted Dr. Cid's finding of "moderate" difficulties in any area.

*Hagans v. Comm'r of Soc. Sec.*, 694 F.3d 287, 292 (3rd Cir. 2012) (internal quotation marks and citation omitted).

Here, the ALJ determined that Plaintiff had the RFC to perform a full range of work at all exertional levels, with the following nonexertional limitations: no ladders, scaffolds or ropes; no exposure to heavy machinery or heights; occasional contact with general public, co-workers and supervisors, that involved no more than simple, routine, repetitive tasks. Plaintiff asserts that the following statement that the ALJ made in making this assessment was unsupported by substantial evidence: "Even when considering the claimant's failure to adhere to her medication regimen throughout her treatment, her anxiety and depression, aided no doubt by her history of substance abuse, is linked with what one would expect to be normal reaction to specific, challenging events occurring in her life and in her relationships, rather than an innate mental disability." AR 28. Plaintiff argues that there is no evidence indicating that she did not adhere to her medication treatment, or that her substance abuse issues persisted past the summer of 2013. However, both of these statements are corroborated by the record evidence cited by the ALJ. Plaintiff openly admitted to not being on her medication, which the ALJ noted in her decision, *see* AR 26, 880 ("She related that she is not on her medication and that it is becoming a problem."). Plaintiff also admitted to using alcohol even after 2013, and reported using cocaine in July of 2014. AR 26, 880. Plaintiff also argues that the ALJ's statement that Plaintiff's anxiety and depression are linked to her challenging life circumstances amounted to an unsupported "finding" that Plaintiff is "not really mentally ill." ECF No. 12 at 28. The ALJ made no such finding, however. Rather, she merely made the well-supported observation that Plaintiff had experienced a challenging life, which could have contributed to her symptoms. In that regard, the ALJ determined that Plaintiff's RFC, whatever the cause of her symptoms, permitted her to do a

full range of work limited to routine, repetitive tasks, which was supported by substantial evidence.

Thus, the ALJ's RFC assessment at step four was supported by substantial evidence.

## IV.  **CONCLUSION**

For the reasons set forth above, I find that the ALJ's decision is supported by substantial evidence in the record. Accordingly, the ALJ's decision is affirmed.

Dated: January 31, 2019                                              /s/ Freda L. Wolfson
                                                                     Hon. Freda L. Wolfson
                                                                     United States District Judge